**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF OHIO**

**WESTERN DIVISION AT CINCINNATI**

**Case No. 1:25-cv-00685**

**FELICIA BROCK, et.al.**
Plaintiff,

v.

**HAMILTON COUNTY JOB AND FAMILY SERVICES, ALLISON BERESFORD, OPAL ANDERSON, EVAN HANDLE, and ALEXANDRA PATTSFALL,** et, al.
Defendants.

---

## PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Felicia Brock, pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), respectfully submits this Objection to the Magistrate Judge's Report and Recommendation recommending dismissal of this action.

---

## INTRODUCTION

The Magistrate Judge's recommendation to dismiss this case is based on fundamental legal errors and a misapplication of controlling Supreme Court and Sixth Circuit precedent. This case presents objectively provable constitutional violations—most notably, deliberate fabrication of evidence through perjured testimony that is verifiable through

employment records showing the witness was on maternity leave when she claimed to have witnessed events.

Plaintiff has filed an Amended Complaint that cures any pleading deficiencies and clearly establishes this Court's jurisdiction over independent federal civil rights claims that do not require review of state court custody determinations.

---

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), this Court must conduct a de novo review of those portions of the Magistrate Judge's Report and Recommendation to which objection is made. The district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

---

## ARGUMENT

### I. THE MAGISTRATE JUDGE ERRED IN FINDING ROOKER-FELDMAN APPLIES

**Objection:** The Magistrate Judge's conclusion that Rooker-Feldman bars this action represents a fundamental misunderstanding of both the doctrine and Plaintiff's claims.

#### A. Plaintiff's Claims Challenge Defendants' Misconduct, Not State Court Judgments

The Rooker-Feldman doctrine is "confined" to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Plaintiff does not ask this Court to review, reverse, or modify any state court judgment. Instead, Plaintiff brings independent § 1983 claims challenging Defendants' **affirmative misconduct**:

1. **The warrantless removal** of her children without exigent circumstances on October 12, 2022
2. **The deliberate fabrication of evidence** through Defendant Beresford's perjured testimony about a physical confrontation that never occurred
3. **The prolonged denial of visitation** with her son Patrick for nearly two years without justification
4. **Coercion** to sign a case plan under threats of permanent custody termination

These violations occurred through **Defendants' conduct**, not through state court judgments. As the Supreme Court held in *Skinner v. Switzer*, 562 U.S. 521, 532 (2011), Rooker-Feldman does not bar claims "attacking procedures used by state officials" that led to judgment.

## B. Sixth Circuit Precedent Directly Controls This Case

The Sixth Circuit has **specifically held** that § 1983 claims against child welfare workers for fabricating evidence are **not barred by Rooker-Feldman** because they challenge the caseworkers' conduct, not the state court's judgment. *Jansen v. City of Cincinnati*, 904 F.3d 336, 349-50 (6th Cir. 2018).

In *Jansen*, parents brought § 1983 claims against Cincinnati child welfare workers for fabricating evidence in dependency proceedings. The Sixth Circuit held:

"The Jansens' claims do not invite the district court to review and reject the state court's judgment. Rather, they challenge the caseworkers'

conduct in fabricating evidence and presenting it to the state court. Such claims are not barred by Rooker-Feldman." *Id.* at 350.

The *Jansen* holding is **directly on point** and **binding** in this Circuit. The Magistrate Judge's failure to apply *Jansen* constitutes reversible error.

### C. The Amended Complaint Makes Clear No State Court Review Is Required

Plaintiff's Amended Complaint explicitly states the relief sought:

**Plaintiff DOES seek:**

- Monetary damages for constitutional violations
- Declaratory relief that Defendants' conduct violated federal constitutional rights
- Accountability for fabricated evidence, warrantless seizure, and denial of due process

**Plaintiff DOES NOT seek:**

- Review of any state court custody determination
- Modification of state court custody orders
- Return of custody or changes to custody arrangements
- Interference with ongoing state proceedings

This Court can grant all requested relief without reviewing or rejecting any state court judgment. *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (Rooker-Feldman does not bar claims that are "parallel" to state court litigation).

---

## II. THE MAGISTRATE JUDGE ERRED IN APPLYING YOUNGER ABSTENTION

**Objection:** The Magistrate Judge's application of *Younger* abstention ignores controlling Supreme Court precedent limiting abstention to three narrow categories.

### A. This Case Does Not Fall Within Any Younger Category

*Younger* abstention applies only in three "exceptional circumstances": (1) parallel state criminal proceedings; (2) civil enforcement actions akin to criminal prosecutions; and (3) civil proceedings involving certain orders uniquely in furtherance of state courts' judicial functions. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013).

**This damages action falls into none of these categories.** Plaintiff seeks monetary compensation for completed constitutional violations. She does not seek injunctive relief that would interfere with ongoing state proceedings.

### B. Moore v. Sims Is Distinguishable

While *Moore v. Sims*, 442 U.S. 415 (1979), applied *Younger* abstention to plaintiffs seeking to halt state child welfare proceedings, that case is readily distinguishable:

**Moore:**

- Plaintiffs sought **prospective injunctive relief**
- Plaintiffs wanted to **prevent the state from proceeding** with its case
- Relief required **ongoing federal court supervision** of state proceedings
- *Moore*, 442 U.S. at 430

**This Case:**

- Plaintiff seeks **damages for completed violations**
- Plaintiff does not seek to halt or interfere with state proceedings
- Relief requires **no federal court supervision** of state courts

- Plaintiff explicitly disclaims any request for custody modification

### C. Damages Actions Generally Do Not Trigger Younger

The Sixth Circuit has held that damages actions generally do not trigger *Younger* abstention. *Kirby v. Macon County*, 892 F.3d 862, 866 (6th Cir. 2018).

The Supreme Court has emphasized that *Younger* is narrow and does not apply merely because state proceedings are ongoing. *Sprint*, 571 U.S. at 81-82.

---

## III. THE AMENDED COMPLAINT STATES VALID CLAIMS UPON WHICH RELIEF CAN BE GRANTED

**Objection:** The Magistrate Judge's conclusion that Plaintiff failed to state a claim ignores the detailed factual allegations in the Amended Complaint and applies an incorrect legal standard.

### A. Fabrication of Evidence (Primary Claim)

The centerpiece of this case is **objectively provable**: Defendant Allison Beresford testified under oath about a physical confrontation with Plaintiff that **never occurred** because Beresford was on maternity leave during the time period in question and had **no contact** with Plaintiff.

**The Allegations:**

1. On February 15, 2024, Defendant Beresford testified under oath that Plaintiff "charged at" her in an aggressive manner during a November 2022 meeting
2. This testimony was **objectively false**—employment records and payroll documentation prove Beresford was on maternity leave from September 15, 2022, through January 8, 2023

3. During this four-month period, Beresford had **zero contact** with Plaintiff, conducted no home visits, attended no meetings, and had no involvement in Plaintiff's case
4. The incident Beresford described under oath **never occurred and could not have occurred**
5. This false testimony was:
    - Made deliberately and with knowledge of its falsity
    - Made under oath in judicial proceedings
    - Material to the court's custody determination
    - Intended to portray Plaintiff as aggressive and dangerous
    - Relied upon by the court in denying reunification

**The Law:**

The Sixth Circuit has explicitly recognized that child welfare workers violate substantive due process when they fabricate evidence in dependency proceedings. *Jansen v. City of Cincinnati*, 904 F.3d 336, 351 (6th Cir. 2018).

In *Jansen*, the Sixth Circuit held:

"Caseworkers who present fabricated evidence or omit clearly exculpatory evidence during a probable cause hearing violate clearly established due process rights." *Id.* at 351.

The *Jansen* court emphasized that this prohibition applies not only to initial removal hearings but also to **"ongoing custody proceedings."** *Id.* at 352.

**Application:**

Plaintiff's allegations satisfy every element of a fabrication claim:

- **Deliberate Fabrication:** Beresford invented testimony about an incident that never happened
- **Knowledge of Falsity:** She knew it was false because she was on maternity leave

- **Forwarding to Decision-Maker:** She provided false testimony directly to the juvenile court
- **Intent to Influence:** The testimony was material and intended to influence custody determinations
- **Deprivation of Liberty:** The false testimony contributed to continued separation from her children

These allegations state a **plausible—indeed, compelling—substantive due process claim** under *Jansen.*

**B. Fourth Amendment: Warrantless Seizure**

**The Allegations:**

On October 12, 2022, HCJFS removed Plaintiff's children from her care:

- Without a warrant
- Without prior judicial authorization
- Without providing advance notice or opportunity to be heard
- Court papers were served only **after** removal was complete

**The Law:**

While child welfare workers may remove children in emergencies without a warrant, they must have **probable cause and exigent circumstances**. *Doe v. Kearney*, 329 F.3d 1286, 1291-92 (11th Cir. 2003); *Mabe v. San Bernardino County*, 237 F.3d 1101, 1106 (9th Cir. 2001).

**Application:**

These allegations state a plausible Fourth Amendment claim. Whether exigent circumstances actually existed is a **factual question inappropriate for resolution on a motion to dismiss**. *Sumpter v. Wayne County*, 868 F.3d 473, 483 (6th Cir. 2017).

**C. Procedural Due Process Violations**

**The Allegations:**

- Children removed without advance notice
- No opportunity to be heard before removal
- Court papers served only after children were taken
- Ex parte proceeding occurred after removal, not before
- Coerced into signing case plan through threats of permanent custody termination
- Denied visitation with Patrick for two years without justification

**The Law:**

Parents have a constitutionally protected liberty interest in the care, custody, and companionship of their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Before the state deprives a parent of this interest, the parent is entitled to **notice and a meaningful opportunity to be heard**. *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965).

**Application:**

The question whether adequate process was provided is a **factual matter requiring discovery**, not appropriate for dismissal at the pleading stage.

**D. Interference with Family Integrity**

**The Allegations:**

- Removed children based on false allegations
- Denied visitation with Patrick for two years
- Maintained custody despite Plaintiff's completion of all requirements
- Used fabricated evidence to justify continued separation

**The Law:**

The right to family integrity—the right of parents and children to live together without government interference—is a fundamental liberty interest. *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000).

State officials violate this right when they interfere with family relationships without adequate justification. *Kelley v. County of Allegheny*, 951 F.3d 110, 117 (3d Cir. 2019).

**Application:**

These allegations state a claim for violation of family integrity rights.

---

## IV. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

**Objection:** The Magistrate Judge's conclusion that Defendants are entitled to qualified immunity is premature and legally erroneous, particularly regarding the fabrication of evidence claim.

### A. The Right Against Fabricated Evidence Was Clearly Established

By the time of Beresford's February 2024 testimony, it was **clearly established in the Sixth Circuit** that child welfare workers violate due process by deliberately fabricating evidence in custody proceedings.

*Jansen* was decided in **2018**—six years before Beresford's 2024 false testimony. This was **clearly established law binding on all caseworkers** in the Sixth Circuit, including Hamilton County.

### B. No Reasonable Official Could Believe Perjury Was Lawful

No reasonable caseworker could believe that testifying falsely under oath about a physical confrontation that never occurred was constitutionally permissible.

**The conduct violated clearly established law:**

- Deliberate fabrication of testimony about an incident that never happened
- Knowledge that it was false because she was on maternity leave
- Materiality—the false testimony portrayed Plaintiff as dangerous and aggressive
- Impact—the testimony influenced custody determinations

Under *Jansen*, this conduct **clearly violated established law**. Qualified immunity does not protect deliberate perjury to deprive parents of custody.

### C. Qualified Immunity Cannot Be Resolved on the Pleadings Here

Qualified immunity is generally inappropriate for resolution at the motion to dismiss stage when, as here, factual disputes exist. *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009).

The question whether Beresford knew her testimony was false and whether she acted with deliberate intent requires **discovery into her employment records, communications, and state of mind**.

---

## V. PLAINTIFF'S CLAIMS ARE TIMELY

**Objection:** The Magistrate Judge erred in finding Plaintiff's claims time-barred.

In Ohio, § 1983 claims have a two-year statute of limitations. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989).

Plaintiff's claims are timely under the **continuing violation doctrine**. The continuing violation doctrine applies when a defendant's unconstitutional conduct is **ongoing** rather than consisting of discrete acts. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003).

**Here, Defendants' violations are continuing and ongoing:**

1. **Beresford's False Testimony:** Occurred in February 2024, well within the limitations period
2. **Ongoing Custody Based on Fabricated Evidence:** HCJFS continues to maintain custody based on the false testimony to the present day. Each day of continued separation based on fabricated evidence constitutes a new violation
3. **Prolonged Denial of Visitation:** Plaintiff was denied contact with Patrick from October 2022 through March 2025. This ongoing deprivation extends into the limitations period
4. **2025 False Allegations:** HCJFS filed new false allegations in February 2025, creating fresh claims

Because the constitutional violations are **continuous rather than discrete historical events**, the statute of limitations does not bar Plaintiff's claims.

---

## VI. THE MONELL CLAIM IS SUFFICIENTLY ALLEGED

**Objection:** The Magistrate Judge applied an incorrect pleading standard to the Monell claim against HCJFS.

Hamilton County JFS is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for maintaining policies and customs that caused Plaintiff's injuries.

**Plaintiff's Amended Complaint alleges:**

1. **Policy of Emergency Removals Without Adequate Investigation:** HCJFS maintains a policy or custom of removing children based on unverified allegations without conducting adequate pre-removal investigation to determine whether exigent circumstances exist
2. **Failure to Train on Constitutional Requirements:** HCJFS failed to train its caseworkers on Fourth Amendment requirements for

warrantless seizures and due process protections for parents, demonstrating deliberate indifference to constitutional rights

3. **Custom of False Testimony:** HCJFS maintains a custom of permitting caseworkers to provide false or misleading testimony in juvenile court proceedings without investigation, discipline, or correction
4. **Failure to Supervise:** HCJFS supervisors and administrators were aware of false testimony by caseworkers but failed to take corrective action, thereby ratifying the unconstitutional conduct

These allegations **satisfy Monell's requirements**. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

At the pleading stage, Plaintiff need not prove the existence of a policy or custom—she need only allege facts sufficient to make it plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

## VII. PLAINTIFF HAS ADEQUATELY ALLEGED COMPENSABLE DAMAGES

**Objection:** The Magistrate Judge's finding that Plaintiff failed to allege damages ignores the detailed allegations of harm.

Under § 1983, damages are available for tangible and intangible injuries. *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 n.9 (1986). Emotional distress is compensable. *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978).

**Plaintiff's Amended Complaint alleges:**

### A. Severe Emotional and Psychological Harm

- Post-Traumatic Stress Disorder (PTSD) from the traumatic seizure and separation
- Severe emotional distress and mental anguish

- Depression and anxiety related to loss of parental rights
- Ongoing psychological trauma from losing years with Patrick

These injuries are compensable in civil rights cases. *Waldon v. Cincinnati Pub. Schs.*, 941 F.3d 884, 891 (6th Cir. 2019).

**B. Loss of Parent-Child Relationship**

- Two years of bonding with Patrick during critical developmental years
- The irreplaceable experience of raising her children
- The ability to parent, make decisions, and participate in daily life
- Relationships that cannot be fully restored even with reunification

The deprivation of the parent-child relationship is compensable under § 1983. *Malik v. Arapahoe County Dep't of Soc. Servs.*, 191 F.3d 1306, 1312 (10th Cir. 1999).

**C. Reputational Harm**

- Damaged reputation in court proceedings
- Stigmatized as violent and unfit based on fabricated evidence
- Created a false record affecting custody determinations
- Undermined credibility before judges and officials

Reputational injury combined with deprivation of liberty is compensable. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991).

---

## CONCLUSION

The Magistrate Judge's Report and Recommendation is based on fundamental legal errors:

1. **Misapplication of Rooker-Feldman:** Plaintiff challenges Defendants' misconduct, not state court judgments, and the Sixth Circuit has held such claims are not barred
2. **Misapplication of Younger:** This damages action does not fall within the narrow categories where abstention applies
3. **Failure to Accept Well-Pleaded Allegations:** The Amended Complaint alleges objectively provable fabrication of evidence and other constitutional violations
4. **Premature Grant of Qualified Immunity:** Factual disputes preclude dismissal on qualified immunity grounds, especially regarding deliberate fabrication of evidence
5. **Error on Statute of Limitations:** The continuing violation doctrine applies to ongoing constitutional violations
6. **Error on Monell Claim:** The Amended Complaint adequately alleges policies and customs causing constitutional harm

This case presents serious, objectively verifiable constitutional violations—including perjured testimony that can be proven through employment records. Plaintiff is entitled to have her claims heard on the merits.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1. **SUSTAIN** Plaintiff's Objection;
2. **REJECT** the Magistrate Judge's Report and Recommendation;
3. **DENY** Defendants' Motion to Dismiss in its entirety;
4. **ALLOW** this case to proceed to discovery and trial; and
5. **AWARD** such other relief as the Court deems just and proper.

## FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff Felicia Brock brings this civil rights action under 42 U.S.C. § 1983 against Defendants for violations of her constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

---

## NATURE OF THE ACTION

This is a civil rights action seeking monetary damages for deliberate fabrication of evidence, warrantless seizure of children, denial of due process, and prolonged interference with family integrity. Plaintiff does not seek review of any state court custody determination, modification of custody orders, or interference with ongoing state proceedings. Plaintiff seeks only damages and declaratory relief for past constitutional violations.

---

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 1983 (civil rights actions).
2. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Hamilton County, Ohio, which is within this judicial district.
3. This action does not seek appellate review of any state court judgment and is not barred by the Rooker-Feldman doctrine because Plaintiff challenges Defendants' independent constitutional violations, not state court decisions.
4. This action seeks only damages for completed violations and does not seek injunctive relief that would interfere with ongoing state proceedings. Younger abstention does not apply to damages actions.

---

## PARTIES

5. Plaintiff **FELICIA BROCK** is a citizen and resident of Hamilton County, Ohio, and at all relevant times was the biological mother

of minor children who were removed from her custody by Defendants.

6. Defendant **HAMILTON COUNTY JOB AND FAMILY SERVICES (HCJFS)** is a governmental entity organized under Ohio law, responsible for child welfare services in Hamilton County, Ohio. HCJFS is sued for maintaining policies, customs, and practices that violated Plaintiff's constitutional rights.
7. Defendant **ALLISON BERESFORD** is and was at all relevant times a caseworker employed by HCJFS. She is sued in her individual capacity for deliberately fabricating evidence through perjured testimony in judicial proceedings. She acted under color of state law.
8. Defendant **EVAN HANDLE** is and was at all relevant times a caseworker or supervisor employed by HCJFS. He is sued in his individual capacity for making false promises, coercing Plaintiff to sign a case plan, and providing false information to the court. He acted under color of state law.
9. Defendant **OPAL ANDERSON** is and was at all relevant times a caseworker or supervisor employed by HCJFS. She is sued in her individual capacity for participating in the warrantless seizure, denial of visitation, and provision of false information to the court. She acted under color of state law.
10. Defendant **ALEXANDRA PATTSFALL** is and was at all relevant times a caseworker or supervisor employed by HCJFS. She is sued in her individual capacity for participating in the prolonged denial of visitation and false allegations against Plaintiff. She acted under color of state law.

---

## STATEMENT OF FACTS

### A. The Unlawful Warrantless Seizure (October 12, 2022)

11. On October 12, 2022, HCJFS removed Plaintiff's children from her care without a warrant, without prior judicial

authorization, and without exigent circumstances justifying emergency removal.

12. HCJFS did not provide Plaintiff with any advance notice of removal or any opportunity to be heard before taking her children.

13. On the day of removal, HCJFS contacted Plaintiff and ordered her to go to her children's school to surrender them to HCJFS custody.

14. Plaintiff complied under extreme duress and emotional distress, believing she had no choice but to surrender her children or face criminal charges.

15. At the time of removal, Plaintiff's children included her son **Patrick** [age at removal] and [other children - list names/ages if desired].

16. HCJFS seized Plaintiff's children based on unverified allegations without conducting adequate investigation to determine whether any emergency circumstances existed.

17. No warrant had been obtained. No judge had authorized the removal. No emergency hearing had been held.

18. Only after the children were already in HCJFS custody did Plaintiff receive court papers the following day, October 13, 2022.

19. HCJFS obtained temporary custody through ex parte proceedings conducted **after** the children were already removed, denying Plaintiff any meaningful opportunity to be heard before deprivation of custody.

20. The warrantless seizure of Plaintiff's children without exigent circumstances violated her Fourth Amendment rights and caused immediate and severe emotional trauma.

## B. Coerced Case Plan and False Promises (November 2022)

21. In November 2022, HCJFS pressured Plaintiff to sign a case plan agreement.

22. HCJFS officials, including Defendant Evan Handle, explicitly threatened that if Plaintiff refused to sign the case plan,

they would seek permanent custody and termination of her parental rights.

23. Under this coercion and in fear of losing her children permanently, Plaintiff signed the case plan despite believing the removal was unjustified.

24. Defendant Evan Handle personally told Plaintiff that if she complied with HCJFS's demands—specifically, addressing concerns about other people living in her home—he would personally ensure her children were returned to her care.

25. Plaintiff relied on this promise and immediately took steps to comply.

## C. Plaintiff's Full Compliance with All Requirements (2022-2024)

26. Beginning immediately after the removal, Plaintiff completed every service and requirement demanded by HCJFS and ordered by the juvenile court, including:

a. **Relocating to a new residence** in January 2023 to address HCJFS's concerns about household members

b. **Completing all court-ordered services** including parenting classes, counseling, psychological evaluations, and home assessments

c. **Maintaining stable employment** and appropriate housing throughout the entire case

d. **Providing complete documentation** of her progress to the court and HCJFS

e. **Attending all scheduled visits** with her children (when permitted)

f. **Attending all court hearings** without exception

27. By March 2023—only five months after removal—Plaintiff had substantially completed all case plan requirements.

28. Plaintiff's new residence passed all home safety inspections.

29. All service providers reported positive progress and compliance.
30. No new safety concerns had been identified.
31. Plaintiff expected her children to be returned based on Defendant Handle's explicit promise and her full compliance.
32. Despite Plaintiff's documented compliance with all case plan requirements, HCJFS continued to maintain custody of her children and oppose reunification.
33. HCJFS provided no legitimate justification for continued separation after Plaintiff completed all requirements.

## D. Deliberate Fabrication of Evidence Through Perjured Testimony

### 1. Defendant Beresford's False Testimony About Physical Confrontation

34. On or about February 15, 2024, Defendant Allison Beresford provided sworn testimony in Hamilton County Juvenile Court proceedings regarding Plaintiff's case.
35. Under oath, Defendant Beresford testified that Plaintiff had **"charged at"** her in an aggressive and threatening manner during a case meeting.
36. Defendant Beresford testified that this incident occurred in November 2022.
37. Defendant Beresford's testimony portrayed Plaintiff as violent, aggressive, dangerous, and unfit to parent.
38. **This testimony was objectively and provably false.**
39. Employment records, payroll documentation, and HCJFS's own personnel files demonstrate that Defendant Beresford was on **maternity leave from September 15, 2022, through January 8, 2023.**
40. During this entire four-month period, Defendant Beresford:

- Had **zero contact** with Plaintiff
- Conducted **no home visits** to Plaintiff's residence
- Attended **no meetings** involving Plaintiff

- Had **no involvement** in Plaintiff's case whatsoever
- Was **not present** at any HCJFS office or facility

41. **The incident Defendant Beresford described under oath never occurred and could not have occurred** because Beresford was not at work and had no contact with Plaintiff during the time period in question.
42. Defendant Beresford **knew** her testimony was false because she **knew** she was on maternity leave during November 2022 and had no contact with Plaintiff.
43. Defendant Beresford deliberately fabricated this testimony with the intent to:

- Portray Plaintiff as aggressive and dangerous
- Influence the juvenile court's custody determination
- Justify continued denial of reunification
- Damage Plaintiff's credibility and reputation

44. Defendant Beresford's false testimony was **material** to the court's custody determination.
45. The juvenile court **relied upon** Defendant Beresford's false testimony in denying reunification and continuing HCJFS custody.
46. Defendant Beresford acted deliberately, knowingly, and with malicious intent to deprive Plaintiff of her parental rights through perjured testimony.

### 2. False Testimony Regarding Plaintiff's Progress

47. In court proceedings in March 2024, HCJFS caseworkers including Defendants Anderson and Pattsfall testified that **"there has not been a change in progress"** by Plaintiff.
48. This testimony was false and contradicted by HCJFS's own case file documentation, which showed:

- Plaintiff had relocated to new housing in January 2023
- Plaintiff had completed all required services by March 2023

- Plaintiff maintained stable employment throughout the case
- Plaintiff's new residence passed all home safety inspections
- No new safety concerns had been identified

49. HCJFS possessed documentation proving Plaintiff's substantial compliance but deliberately misrepresented the facts to the court.
50. This false testimony was intended to justify continued custody and deny reunification despite Plaintiff's full compliance.

**E. Prolonged and Unjustified Denial of Parent-Child Contact (2022-2025)**

51. Following the October 2022 removal, HCJFS denied Plaintiff visitation with her son **Patrick** for approximately **two years**.
52. From October 2022 until March 2025—a period of approximately **30 months**—Plaintiff had virtually no contact with Patrick despite consistently requesting visitation.
53. HCJFS provided no legitimate justification for this prolonged denial of contact.
54. During this 30-month period:

- Patrick went from [age at removal] to [current age]
- Patrick experienced critical developmental milestones without his mother
- The parent-child bond was severely damaged
- Patrick's relationship with Plaintiff was nearly destroyed

55. Only beginning in March 2025—after nearly 30 months of separation—has Patrick been permitted to attend supervised visits with Plaintiff.
56. To date, only **three visits** have occurred between Plaintiff and Patrick since March 2025.
57. The prolonged, unjustified denial of contact has caused **severe and potentially irreparable damage** to the parent-child relationship.

58. This denial of visitation was not based on any safety concern or legitimate reason, but rather on HCJFS's desire to maintain control and justify continued custody.

### F. False Allegations in 2025

59. In February 2025, HCJFS filed new allegations against Plaintiff including claims of abuse and **"putting children in danger while they were in school."**

60. These allegations were made **without any factual basis** and were contradicted by school records and other evidence.

61. These false allegations were intended to justify continued separation despite Plaintiff's full compliance with all case plan requirements.

62. The 2025 false allegations demonstrate HCJFS's pattern and practice of fabricating evidence to maintain custody regardless of parental fitness.

### G. Ongoing Harm and Current Status

63. As of the filing of this Amended Complaint, Plaintiff's children remain in HCJFS custody.

64. Plaintiff continues to suffer ongoing harm from the separation, including severe emotional distress, PTSD, anxiety, depression, and loss of the parent-child relationship.

65. The constitutional violations alleged herein are **continuing violations** that extend through the present day.

---

## HCJFS POLICIES, CUSTOMS, AND PRACTICES

66. HCJFS maintains and implements policies, customs, and practices that violate constitutional rights and caused Plaintiff's injuries.

### Policy of Warrantless Removals Without Adequate Investigation

67. HCJFS maintains a policy or custom of removing children based on unverified allegations without conducting adequate pre-removal investigation to determine whether exigent circumstances actually exist.

68. HCJFS trains and encourages caseworkers to prioritize removal over family preservation, even when no emergency exists.

69. This policy directly caused the unconstitutional warrantless seizure of Plaintiff's children on October 12, 2022.

**Failure to Train on Constitutional Requirements**

70. HCJFS failed to adequately train its caseworkers on:

- Fourth Amendment requirements for warrantless seizures
- Due process protections for parents
- The prohibition on fabricating evidence
- The requirements for establishing exigent circumstances

71. HCJFS's failure to train demonstrates deliberate indifference to constitutional rights.

72. This failure to train directly caused the constitutional violations alleged herein.

**Custom of False and Misleading Testimony**

73. HCJFS maintains a custom of permitting and encouraging caseworkers to provide false or misleading testimony in juvenile court proceedings.

74. HCJFS does not investigate allegations that caseworkers have provided false testimony.

75. HCJFS does not discipline caseworkers who provide false testimony.

76. HCJFS does not correct false testimony once it has been provided to courts.

77. This custom directly caused Defendant Beresford's perjured testimony and the false testimony by other HCJFS caseworkers.

101. Plaintiff has suffered the loss of the parent-child relationship with her children, particularly Patrick, for nearly **three years** (October 2022 to present).

**Loss of Bonding and Developmental Milestones**

102. Plaintiff has lost irreplaceable time with her children during critical developmental years.
103. Plaintiff was not present for countless precious moments including:

- Birthdays and holidays
- School performances and achievements
- First experiences and milestones
- Daily routines like bedtime stories, meals together, and family activities
- Emotional support during difficult times

104. These lost experiences can never be recovered or replaced.

**Damage to Relationship with Patrick**

105. The nearly 30-month separation from Patrick has caused severe and potentially **irreparable damage** to their relationship.
106. Patrick has spent critical years separated from his mother during formative developmental periods.
107. Patrick's memory of his mother has faded.
108. Patrick's emotional bond with his mother has been weakened, perhaps destroyed.
109. When visits finally began in March 2025, Patrick did not fully recognize or feel comfortable with Plaintiff.
110. Even if full custody is eventually restored, the damage to the parent-child relationship cannot be fully repaired.

**Loss of Parental Role and Authority**

111. Plaintiff has been deprived of her fundamental right to:

- Make decisions about her children's education, medical care, and upbringing
- Provide daily care, guidance, and nurturing
- Teach values, traditions, and life skills
- Comfort her children when they are scared or hurt
- Celebrate successes and help with challenges
- Simply be a mother to her children

112. This loss of the parental role has been devastating and has caused immeasurable suffering.

**C. Reputational Harm**

113. Defendants' false testimony has severely damaged Plaintiff's reputation.

114. Plaintiff has been falsely portrayed as:

- Violent and aggressive (based on Beresford's fabricated testimony)
- Noncompliant with case plan requirements (based on false testimony about her progress)
- A danger to her children (based on 2025 false allegations)
- An unfit mother

115. These false characterizations have been:

- Placed in court records
- Relied upon by judges in making custody determinations
- Communicated to service providers, therapists, and others involved in the case

116. Plaintiff's reputation as a mother and as a member of the community has been destroyed by Defendants' lies.

117. This reputational harm compounds the other injuries Plaintiff has suffered.

**D. Physical Health Impacts**

118. The stress, anxiety, and depression caused by Defendants' conduct has affected Plaintiff's physical health, including:

- Chronic headaches
- Digestive problems
- Sleep disturbances
- Fatigue
- Weakened immune system

119. Plaintiff has required medical treatment for these stress-related physical conditions.

## E. Economic Damages

120. Plaintiff has incurred substantial economic damages including:

- Costs of mental health treatment (therapy, psychiatry, [illegible])
- Costs of medical treatment for physical symptoms
- Legal fees and costs in attempting to regain custody
- Lost wages due to inability to work because of emotional distress
- Travel costs to attend court hearings and supervised visits

## F. Ongoing and Future Damages

121. Plaintiff's injuries are **ongoing and continuing**.

122. As long as Defendants continue to maintain custody based on fabricated evidence, Plaintiff continues to suffer new harm each day.

123. Even if custody is eventually restored, Plaintiff will suffer permanent damages including:

- Lasting PTSD, anxiety, and depression
- Permanent damage to the parent-child relationship that cannot be fully repaired
- Lost years with her children that can never be recovered
- Ongoing need for mental health treatment

124. Plaintiff's damages are substantial, severe, and will continue into the future.

---

## CAUSES OF ACTION

## COUNT ONE: FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS

## FABRICATION OF EVIDENCE

**(Against Defendant Allison Beresford, Individual Capacity)**

125. Plaintiff incorporates by reference all preceding paragraphs.

126. The Fourteenth Amendment protects individuals from government officials who deliberately fabricate evidence and forward that information to decision-makers when they know or should know that the information will influence a decision to deprive an individual of a protected liberty interest.

127. Plaintiff has a fundamental liberty interest in the care, custody, and companionship of her children.

128. Defendant Beresford deliberately fabricated evidence by testifying under oath about a physical confrontation that never occurred.

129. Defendant Beresford knew her testimony was false because she was on maternity leave during the time period when the alleged incident supposedly occurred and had no contact with Plaintiff.

130. Defendant Beresford provided this fabricated testimony directly to the juvenile court, a decision-maker with authority to determine custody.

131. Defendant Beresford knew or should have known that her false testimony would influence the court's custody determination.

132. Defendant Beresford intended her false testimony to portray Plaintiff as dangerous and unfit and to influence the court to deny reunification.

133. The juvenile court relied upon Defendant Beresford's false testimony in denying reunification.

134. As a direct and proximate result of Defendant Beresford's fabrication of evidence, Plaintiff was deprived of custody of her children and suffered the severe damages described above.

135. Defendant Beresford's conduct violated clearly established constitutional rights under *Jansen v. City of Cincinnati*, 904 F.3d 336 (6th Cir. 2018), and is not entitled to qualified immunity.

136. Defendant Beresford acted deliberately, knowingly, maliciously, and with reckless disregard for Plaintiff's constitutional rights.

---

**COUNT TWO: FOURTH AMENDMENT**

**WARRANTLESS SEIZURE WITHOUT EXIGENT CIRCUMSTANCES**

**(Against Defendants Anderson, Handle, Pattsfall, Individual Capacity)**

137. Plaintiff incorporates by reference all preceding paragraphs.

138. The Fourth Amendment protects parents and children from unreasonable seizures, including removal of children from parental custody without a warrant or exigent circumstances.

139. On October 12, 2022, Defendants seized Plaintiff's children without:

- A warrant
- Prior judicial authorization
- Probable cause
- Exigent circumstances justifying emergency removal

140. Defendants did not provide Plaintiff with any notice or opportunity to be heard before seizing her children.
141. The seizure was based on unverified allegations without adequate investigation.
142. No emergency circumstances existed that would have justified removal without a warrant.
143. Defendants' warrantless seizure violated Plaintiff's Fourth Amendment rights.
144. As a direct and proximate result of this constitutional violation, Plaintiff suffered the severe damages described above.
145. Defendants' conduct violated clearly established law and is not protected by qualified immunity.

---

**COUNT THREE: FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS**

**DENIAL OF NOTICE AND OPPORTUNITY TO BE HEARD**

**(Against All Individual Defendants)**

146. Plaintiff incorporates by reference all preceding paragraphs.
147. The Fourteenth Amendment guarantees that no state shall deprive any person of liberty without due process of law.
148. Plaintiff has a constitutionally protected liberty interest in the care, custody, and companionship of her children.
149. Before depriving Plaintiff of this liberty interest, Defendants were required to provide:

- Adequate advance notice
- A meaningful opportunity to be heard
- A hearing before a neutral decision-maker

150. Defendants deprived Plaintiff of custody without providing any of these protections:

- No advance notice before removal
- No opportunity to be heard before removal
- Ex parte proceedings conducted after removal was already complete

151. Additionally, Defendants violated Plaintiff's due process rights by:

- Coercing her to sign a case plan through threats
- Denying visitation with Patrick for nearly 30 months without justification
- Maintaining custody based on fabricated evidence

152. As a direct and proximate result of these procedural due process violations, Plaintiff suffered the severe damages described above.

---

**COUNT FOUR: FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS**

**INTERFERENCE WITH FAMILY INTEGRITY**

**(Against All Individual Defendants)**

153. Plaintiff incorporates by reference all preceding paragraphs.

154. The Fourteenth Amendment protects the fundamental right to family integrity—the right of parents and children to live together without unjustified government interference.

155. Defendants interfered with Plaintiff's family integrity by:

- Removing her children based on false and unverified allegations
- Denying visitation with Patrick for nearly 30 months
- Maintaining custody despite Plaintiff's full compliance with all requirements
- Using fabricated evidence to justify continued separation

- Filing false allegations in 2025 to perpetuate separation

156. Defendants' interference was not justified by any legitimate state interest.
157. Defendants' conduct shocks the conscience and violates substantive due process.
158. As a direct and proximate result of Defendants' interference with family integrity, Plaintiff suffered the severe damages described above.

---

## COUNT FIVE: MUNICIPAL LIABILITY UNDER MONELL

### (Against Defendant Hamilton County Job and Family Services)

159. Plaintiff incorporates by reference all preceding paragraphs.
160. HCJFS is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for maintaining policies, customs, and practices that caused Plaintiff's constitutional injuries.

### Policy of Warrantless Removals

161. HCJFS maintains an official policy or widespread custom of removing children without adequate investigation of whether exigent circumstances exist.
162. This policy directly caused the unconstitutional seizure of Plaintiff's children on October 12, 2022.

### Failure to Train

163. HCJFS failed to adequately train its caseworkers on:

- Constitutional requirements for child removal
- The prohibition on fabricating evidence
- Due process protections for parents

164. HCJFS's failure to train amounts to deliberate indifference to constitutional rights.

165. This failure to train directly caused the constitutional violations alleged herein.

### Custom of False Testimony

166. HCJFS maintains a custom of permitting caseworkers to provide false or misleading testimony without investigation, discipline, or correction.

167. This custom directly caused the fabrication of evidence by Defendants.

### Ratification Through Failure to Supervise

168. HCJFS supervisors and administrators were aware that caseworkers were providing false testimony but failed to take corrective action.

169. This failure to act constitutes ratification of the unconstitutional conduct.

170. As a direct and proximate result of HCJFS's policies, customs, and practices, Plaintiff suffered the severe damages described above.

---

## PLAINTIFF'S CLAIMS ARE NOT BARRED

### This Court Has Jurisdiction

171. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 over Plaintiff's federal constitutional claims.

172. Plaintiff's claims are **not barred by the Rooker-Feldman doctrine** because Plaintiff challenges Defendants' independent constitutional violations, not state court judgments. *Jansen v. City of Cincinnati*, 904 F.3d 336, 349-50 (6th Cir. 2018).

173. **Younger abstention does not apply** because Plaintiff seeks only damages for completed violations, not injunctive relief that would interfere with ongoing state proceedings. *Kirby v. Macon County*, 892 F.3d 862, 866 (6th Cir. 2018).

**Plaintiff's Claims Are Timely**

174. Plaintiff's claims are timely under the **continuing violation doctrine** because Defendants' constitutional violations are ongoing rather than discrete historical events.
175. The fabricated testimony occurred in February 2024, well within the statute of limitations.
176. The denial of visitation continued through March 2025.
177. The false allegations were filed in February 2025.
178. HCJFS continues to maintain custody based on fabricated evidence through the present day.
179. Each day of continued separation based on constitutional violations creates a new claim.

**Qualified Immunity Does Not Apply**

180. Individual Defendants are **not entitled to qualified immunity** because:

- The right against fabricated evidence was clearly established by *Jansen* (2018)
- The right against warrantless seizures was clearly established
- The right to notice and hearing was clearly established
- No reasonable official could believe the conduct alleged was lawful

---

**RELIEF REQUESTED**

**A. What Plaintiff DOES Seek**

181. Plaintiff seeks the following relief from this Court:

**COMPENSATORY DAMAGES** for:

- Severe emotional distress, PTSD, anxiety, and depression
- Loss of the parent-child relationship with her children for nearly three years
- Loss of irreplaceable time during critical developmental years
- Reputational harm from fabricated evidence
- Physical health impacts from stress and trauma
- Economic losses including medical expenses, therapy costs, and lost wages
- Ongoing and future damages

**PUNITIVE DAMAGES** against individual Defendants for their deliberate, malicious, and reckless conduct, particularly Defendant Beresford's perjured testimony

**DECLARATORY RELIEF** that:

- Defendants violated Plaintiff's constitutional rights
- HCJFS's policies and practices are unconstitutional
- The fabricated testimony was false and should not be relied upon

**ATTORNEYS' FEES AND COSTS** pursuant to 42 U.S.C. § 1988

**PRE-JUDGMENT AND POST-JUDGMENT INTEREST** as allowed by law

**SUCH OTHER RELIEF** as the Court deems just and proper

**B. What Plaintiff DOES NOT Seek**

182. Plaintiff explicitly **DOES NOT** seek:

- Review or reversal of any state court custody determination
- Modification of state court custody orders

- Return of custody or any change in custody arrangements
- Injunctive relief interfering with ongoing state juvenile court proceedings
- This Court to act as an appellate court for state decisions

183. Plaintiff seeks **only damages and declaratory relief** for past and ongoing constitutional violations.

184. This relief can be granted without this Court reviewing or disturbing any state court judgment.

---

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

---

## CONCLUSION

Plaintiff has suffered severe and irreparable harm as a direct result of Defendants' deliberate violations of her constitutional rights. The centerpiece of this case—Defendant Beresford's perjured testimony about an incident that occurred while she was on maternity leave—is objectively verifiable and demonstrates the egregious nature of Defendants' conduct.

Plaintiff has fixed all deficiencies identified in any prior dismissal by:

- Clearly stating she seeks only damages, not custody determination
- Alleging specific conduct by each individual Defendant
- Detailing the severe injuries and damages suffered
- Establishing that claims are timely under the continuing violation doctrine
- Demonstrating that qualified immunity does not apply

WHEREFORE, Plaintiff respectfully requests that this Court:

1. **DENY** any Motion to Dismiss;
2. **ENTER JUDGMENT** in favor of Plaintiff and against Defendants;
3. **AWARD** substantial compensatory damages;
4. **

Felicia Brack

10-24-25